UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEANDRE LAMAR-DANTE JOHNSON,

                    Petitioner,                        Case No. 1:21-cv-792

v.                                                     Hon. Hala Y. Jarbou

GEORGE STEPHENSON,

                    Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Deandre Lamar-Dante Johnson is incarcerated with the Michigan Department of Corrections at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of the second-degree murder of Daran Adams-Jackson, in violation of Mich. Comp. Laws § 750.317, being a felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On March 19, 2019, the court sentenced Petitioner to prison terms of 40 to 75 years for murder and 3 to 7 years for felon-in-possession. At least the murder sentence was directed to be served consecutive to a sentence of 2 years for felony-firearm. That consecutive string of sentences, in turn, is to be served consecutively to a sentence of 2 to 15 years for second-degree home invasion, a sentence for which Petitioner was on parole when he committed the murder.

On September 13, 2021, Petitioner filed his habeas corpus petition raising five grounds for

relief, as follows:

I.      The trial court violated [Petitioner's] rights to due process and the effective
        assistance of counsel when it denied trial counsel's motion to withdraw
        where there was a complete breakdown in the attorney-client relationship.

II.     The trial court erred in denying trial counsel's request for a mistrial when
        the prosecution showed the jury an unedited, prejudicial photograph of
        [Petitioner], which had already been deemed inadmissible, during closing
        arguments.

III.    The trial court denied [Petitioner's] right to a fair trial when it allowed the
        prosecution to present irrelevant and unduly prejudicial testimony
        concerning the decedent's identity where (1) his identity was not in dispute
        and (2) the testimony only served to bolster the decedent's image and garner
        sympathy from the jury. Alternatively, trial counsel was ineffective for
        failing to object to the testimony.

IV.     The improper admission of Mr. Oliver's preliminary examination testimony
        violated [Petitioner's] Confrontation Clause right, and was also contrary to
        MRE 804(b)(1).

V.      [Petitioner] is entitled to resentencing where the prosecution failed to
        provide proper notice under MCL 769.10 that he was subject to a habitual
        offender second sentence enhancement if convicted at trial.

(Pet., ECF No. 1-1, PageID.27.) Respondent asserts that Petitioner's grounds for relief are

meritless.[1] (ECF No. 8.) For the following reasons, the Court concludes that Petitioner has failed

---

[1] Respondent also contends that Petitioner's second ground for relief is unexhausted and that his
third and fourth grounds are procedurally defaulted. (ECF No. 7, PageID.239.) Respondent asserts
that Petitioner's second ground for relief solely relates to the admission of evidence. The Court,
however, has already concluded that the second ground for relief "relates to prosecutorial
misconduct during closing arguments, not the admission of evidence." (ECF No. 11,
PageID.1668.) Specifically, in a prior order, the Court explained that "[i]n an attempt to thoroughly
address all claims raised and potentially implicated by Petitioner's argument," Respondent had
"introduced a due process claim relating to the admission of evidence that is not present in
Petitioner's state court appeal brief or his petition." (*Id.*) Given that the only claim presented to
this Court is exactly the same claim that was presented to the state courts, Petitioner's second
ground for relief is exhausted.

Moreover, Respondent recognizes that a habeas corpus petition "may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> On October 22, 2017, at about 7:41 p.m., neighbors in an apartment complex in Grand Rapids heard gunshots. At approximately 8:00 p.m., defendant hailed an Uber in the vicinity of the apartment complex. Sometime shortly before 9:00 p.m., the victim's fiancée returned home and found the victim "slumped over, laid down in a puddle of blood." Another neighbor was able to confirm that he saw defendant, wearing blue jeans and a white T-shirt, inside the victim's apartment earlier that evening. Defendant's uncle and his uncle's girlfriend also testified for the prosecution. Both described how defendant called to ask for a ride that evening and then eventually confessed to having killed the victim. Defendant's uncle assisted defendant by selling defendant's .40 caliber semiautomatic handgun to a friend and helping to burn defendant's clothing in a secluded spot. This testimony was corroborated by the individual who purchased the gun and a firearms examination by the Michigan State Police that matched the firearm to the cartridge casings found at the scene. The prosecution also presented evidence of the burn pile and a 911 call that reported the fire at approximately 10:40 p.m. Included in the burn pile were True Religion jeans buttons and rivets, the same brand of jeans that defendant acknowledged wearing that night.

*People v. Johnson*, No. 348382, 2020 WL 6937371, at *1 (Mich. Ct. App. Nov. 24, 2020).

---

State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, the Court finds that judicial economy counsels that the better approach is to go directly to a discussion of the merits of Petitioner's claims.

Jury selection for Petitioner's trial began on February 18, 2019. (Trial Tr. I, ECF No. 8-9.) Over the course of four days, the jury heard testimony from numerous witnesses, including law enforcement officers, Petitioner's uncle, and the victim's mother. After less than two hours of deliberation, the jury reached a guilty verdict on February 22, 2019. (Trial Tr. V, ECF No. 8-13, PageID.1338–1339.) Petitioner appeared before the trial court for sentencing on March 19, 2019. (ECF No. 8-14.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals, raising the same five issues he raises in his habeas petition. (ECF No. 8-15, PageID.1449–1502.) On November 24, 2020, the court of appeals affirmed Petitioner's convictions and sentences. *Johnson*, 2020 WL 6937371, at *1. Petitioner, again with the assistance of counsel, then filed an application for leave to appeal to the Michigan Supreme Court, raising the same five issues. (ECF No. 8-16, PageID.1552–1604.) The Michigan Supreme Court denied leave to appeal on July 6, 2021. (*Id.*, PageID.1551.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

4

correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching

5

outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d
433, 436 (6th Cir. 2003)).

## III.   Discussion

### A.       Ground I—A Complete Breakdown in the Attorney-Client Relationship

In habeas ground I, Petitioner contends that his rights to due process and effective
assistance of counsel were violated when the trial court denied trial counsel's motion to withdraw,
ignoring a complete breakdown in the attorney-client relationship. (ECF No. 1-1, PageID.27.) The
trial court did not find a complete breakdown in the attorney client relationship. The court of
appeals did not find such a breakdown either, explaining:

> An indigent defendant is guaranteed the right to counsel; however,
> he is not entitled to have the attorney of his choice appointed simply
> by requesting that the attorney originally appointed be replaced.
> Appointment of a substitute counsel is warranted only upon a
> showing of good cause and where substitution will not unreasonably
> disrupt the judicial process. [*People v. Traylor*, 628 N.W.2d 120
> (2001).]

> "Good cause exists where a legitimate difference of opinion develops between a
> defendant and his appointed counsel with regard to a fundamental trial tactic," *id.*,
> but decisions about defense strategy that are not fundamental in nature, "including
> what evidence to present and what arguments to make, are matters of trial strategy,
> and disagreements with regard to trial strategy or professional judgment do not
> warrant appointment of substitute counsel," *People v. Strickland*, 293 Mich. App.
> 393, 398; 810 N.W.2d 660 (2011). A breakdown in the attorney-client relationship
> may also constitute good cause. *People v. McFall*, 309 Mich. App. 377, 383; 873
> N.W.2d 112 (2015). However, "[a] defendant may not purposely break down the
> attorney-client relationship by refusing to cooperate with his assigned attorney and
> then argue that there is good cause for a substitution of counsel." *Traylor*, 245 Mich.
> App. at 462.

> We recognize that there was an obvious tension between defendant and counsel.
> However, the record supports a conclusion that defendant was responsible for any
> breakdown in the attorney-client relationship. The history of this case reflects a
> pattern of defendant showing displeasure with appointed counsel. Notably, the trial
> court had previously agreed to substitute former appointed counsel after that
> attorney-client relationship became "turbulent" and defendant had, similarly to the
> present circumstances, filed a grievance. Defendant was not entitled to have the
> attorney of his choice, see *id.*, and there is no question that the trial court previously

7

made defendant fully aware that a defendant may not obtain new appointed counsel simply by repeatedly filing grievances against current counsel, see *Strickland*, 293 Mich. App. 397–398. Although the record is not entirely clear on the nature of the disagreement between defendant and counsel or how it related to defense strategy, defendant does not explain on appeal what about this disagreement affected matters of fundamental trial strategy or how this information was relevant at all to raising a particular defense theory. Absent any indication otherwise, we conclude that the disagreement between defendant and appointed counsel "with regard to trial strategy or professional judgment" was the type that "do[es] not warrant appointment of substitute counsel." See *id.* at 398.[1]

In any event, when defense counsel performs adequately to protect a defendant's interests at trial, the defendant is not prejudiced by the denial of a request for substitute counsel and the conviction will not be set aside. See *People v. Buie*, 298 Mich. App. 50, 67; 825 N.W.2d 361 (2012). Defendant makes only conclusory assertions that he was denied a right to a fair trial; he raises no argument concerning how some other counsel might have proceeded differently and, by doing so, even plausibly obtained a different result in light of the overwhelming evidence of defendant's guilt. Reviewing the record as a whole, there is no reason to suspect that counsel was inattentive or disinterested in zealously advocating on defendant's behalf.

————————

[1] We also note it was defendant's responsibility to request substitute counsel at the earliest possible moment, not minutes before the start of trial. See *McFall*, 309 Mich. App. at 384.

*Johnson*, 2020 WL 6937371, at *1–2 & n.1.

Ultimately, on habeas review, whether or not there was a complete breakdown in the attorney-client relationship is immaterial because clearly established federal law does not tie substitution of counsel to such a breakdown. Indeed, many of the factors that courts look to when evaluating whether or not to substitute counsel are derived from the opinions of lower federal

courts[2] or even the United States Supreme Court interpreting the Federal Rules of Criminal Procedure[3] or federal statutes.[4]

United States Supreme Court authority regarding the ***federal constitutional*** requirement to provide substitute appointed counsel is scant. The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624.

---

[2] For example, the Sixth Circuit holds an indigent defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution" of counsel. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *accord Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011).

[3] For example, cases interpreting Federal Rule of Criminal Procedure 44 regarding the court's obligation to inquire into potential conflicts that might exist when there is joint representation. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 161 (1988); *Mickens v. Taylor*, 535 U.S. 162 (2002).

[4] For example, in *Martel v. Clair*, 565 U.S. 648 (2012), the Supreme Court considered the appropriate standard for permitting the substitution of counsel appointed for capital defendants and habeas petitioners pursuant to 18 U.S.C. § 3599. The Court settled on the "interests of justice" standard employed for substitution requests in non-capital cases under 18 U.S.C. § 3006A. The Court described the context-specific inquiry attendant to that standard by reference to the factors that courts might consider: "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel*, 565 U.S. at 663. The Sixth Circuit Court of Appeals concluded that *Martel* "centered on the federal statutory standard for reviewing substitution motions, and not the Sixth Amendment." *Wallace v. Chapman*, No. 19-1374, 2019 WL 4943757, at *3 n.1 (6th Cir. Sept. 23, 2019).

As the Sixth Circuit explained in *Peterson v. Smith*, 510 F. App'x 356 (6th Cir. 2013):

> The Sixth Amendment right to counsel does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Although Peterson relies on a Ninth Circuit decision finding that being forced to proceed with appointed counsel despite the complete breakdown of the attorney-client relationship violated the right to counsel, the en banc court vacated that decision precisely because the state court decision denying new counsel was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Plumlee v. Masto*, 512 F.3d 1204 (9th Cir. 2008) (en banc), *rev'g Plumlee v. Sue del Papa*, 426 F.3d 1095 (9th Cir. 2005).
>
> Peterson further argues that the trial court failed to make the inquiry this court would require of a district court considering a defendant's request for substitute counsel. *See United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir.2007). Not only does it appear that the trial court made sufficient inquiry, the failure to do so could not be the basis for relief under AEDPA because such inquiry is not required by clearly established Supreme Court precedent. *See Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012) (per curiam) (finding requirement that court inquire into good cause was not clearly established Federal law); *James v. Brigano*, 470 F.3d 636, 643 (6th Cir.2006) (reversing a grant of relief because the inquiry requirement was not clearly established Federal law). Of course, that would not preclude petitioner from seeking relief on the grounds that the refusal to appoint new counsel resulted in a denial of effective assistance of counsel at trial. *Brooks*, 454 F. App'x at 452 (relying on *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts")).

*Peterson*, 510 F. App'x at 366–67; *see also Wallace*, 2019 WL 4943757, at *3 n.1 (6th Cir. Sept. 23, 2019) (stating that the petitioner "could prevail on his substitution-of-counsel claim only by showing 'that the refusal to appoint new counsel resulted in a denial of effective assistance of counsel at trial'" (quoting *Peterson*, 510 F. App'x at 366–67)).

Petitioner's entire "substitution" argument is focused on demonstrating a breakdown in his relationship with counsel, (Pet'r's Br., ECF No. 1-1, PageID.51–59), not the adequacy of the representation counsel provided. Accordingly, Petitioner has failed to demonstrate that the state court's rejection of his substitution request is contrary to, or an unreasonable application of, clearly established federal law. Thus Petitioner is not entitled to habeas relief on this claim.

### B.      Ground II—Photograph of Petitioner

In habeas ground II, Petitioner asserts that the trial court erred in denying counsel's request for a mistrial when the prosecution showed the jury an unedited, prejudicial photograph of Petitioner during closing arguments, even though the photograph had already been deemed inadmissible. (ECF No. 1-1, PageID.27.)

In rejecting Petitioner's argument, the court of appeals stated:

> We also reject defendant's argument that the trial court erred by denying defendant's request for a mistrial after the prosecution showed the jury a prejudicial photograph of defendant holding a large amount of cash during closing arguments that had already been excluded by the trial court. "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v. Lane*, 308 Mich. App. 38, 60; 862 N.W.2d 446 (2014). In *Lane*, 308 Mich. App. At 61, this Court held that a prosecutor's unintentional introduction of video evidence suggesting a defendant's gang affiliation and criminal history, which the prosecutor had previously agreed should have been redacted, did not require a mistrial. This Court agreed with the trial court that "the information had been on the screen for only seconds and that it could be remedied with a curative instruction." *Id.* In this case, defendant is unable to demonstrate that the prosecutor intentionally presented or improperly emphasized the unedited photograph. It appears to have been an honest mistake, quickly corrected. Indeed, the record only suggests that the photograph was on the screen for a short period before the prosecutor switched slides upon noticing its unedited state. The circumstances presented are extremely similar to *Lane*. Defendant does not argue why some curative instruction would not have alleviated any prejudicial effect of the jurors observing the photograph in its unedited form. See *People v. Unger*, 278 Mich. App. 210, 235; 749 N.W.2d 272 (2008) (stating that "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements" and that "jurors are presumed to follow their instructions"). Accordingly, the trial court did not err in denying defendant's request for a mistrial.

*Johnson*, 2020 WL 6937371, at *2.

Following the trial court's charge to the jury, Petitioner's counsel moved for a mistrial because the prosecutor, during closing arguments, showed the inadmissible picture to the jury on the screen. (Trial Tr. V, ECF No. 9-13, PageID.1335.) In response, the prosecutor stated:

> I was aware of it when I reminded myself of it when I saw it on the screen, your Honor. I quickly changed slides. I apologize. I absolutely didn't intend for that exhibit to be modified at any point when I prepared my closing argument last night, and I just forgot it was there.
>
> I do want to state for the record that although Mr. Kirchhoff objected to that, the defendant wanted the entire exhibit shown. I could overhear him saying that while Mr. Kirchhoff and I were making that stipulation. So, for what it's worth, for the record that's my memory of it, and I simply mistakenly had it on for the jury.

(*Id.*, PageID.1335–1336.) The prosecutor confirmed that the photograph was not included in those sent back to the jury room. (*Id.*, PageID.1336.) Trial counsel stated that he did not object immediately because he "did not want to emphasize it." (*Id.*, PageID.1337.) The trial court concluded that it was "obviously an oversight and it was a mistake," and denied the request for a mistrial. (*Id.*)

Here, Petitioner contends that the trial court erred by denying his request for a mistrial, and the mistrial request was premised on an assertion of prosecutorial misconduct. With respect to Plaintiff's claim that the trial court erred in denying his request for a mistrial, the decision to grant or deny a mistrial is, generally a matter under state law, and a challenge to such a decision is not cognizable on federal habeas review. *See, e.g.*, *Barry v. Warden*, No. 19-1855, 2019 WL 7834652, at *3 (6th Cir. Dec. 11, 2019); *Hruby v. Wilson*, 494 F. App'x 514, 516 (6th Cir. 2012). That decision, however, may impact federal constitutional rights. *Arizona v. Washington*, 434 U.S. 497, 514 (1978) ("[A] constitutionally protected interest is inevitably affected by any mistrial decision."). For example, if a mistrial is requested because of perceived unfairness caused by the admission of evidence or improper argument, and the request is denied, the underlying impropriety might result in the denial of due process. Thus, federal habeas courts "have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion'" when considering a request to declare a mistrial. *Washington*, 434 U.S. at 514. Filtered through the doubly deferential standard of the AEDPA, "[t]he question . . . is . . . whether the determination of the [state courts] . . . was

'an unreasonable application of . . . clearly established Federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Underlying Plaintiff's claim regarding the error of the trial court is an assertion that the prosecutor engaged in prosecutorial misconduct by showing the photograph of Petitioner. With respect to claims of prosecutorial misconduct, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Court has emphasized a series of factors to be evaluated when making this determination: (1) whether the comments were isolated or pervasive; (2) whether the comments were deliberately or accidentally put before the jury; (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant; (4) whether the prosecutor manipulated or misstated the evidence; (5) the strength of the overall proof establishing guilt; (6) whether the remarks were objected to by counsel; and (7) whether a curative instruction was given by the court. *See id.* at 182–83; *United States v. Young*, 470 U.S. 1, 12–13 (1985); *Donnelly*, 416 U.S. at 646–47. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

The state courts concluded that the prosecutor did not engage in misconduct because the prosecutor did not intentionally show the photograph to the jury. Instead, it was an "honest mistake." A determination regarding the prosecutor's intent is a "finding of fact." *Oregon v. Kennedy*, 456 U.S. 667, 675 (1982). Thus, this Court must presume that the state courts' findings that the prosecutor did not intend to deliberately show the photograph to the jury is correct. Petitioner has not overcome that presumption with clear and convincing evidence and has not demonstrated that the trial court erred by not declaring a mistrial. Thus, Petitioner has not

demonstrated that the court of appeals' determination is contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to relief on habeas ground II.

### C.  Ground III—Admission of Testimony and Related Ineffective Assistance of Counsel

In habeas ground III, Petitioner contends that the trial court denied his right to a fair trial by allowing the prosecution to present purportedly irrelevant and unduly prejudicial testimony:

> The prosecution called Cynthia Jackson, Mr. Adams-Jackson's mother, to testify in part about Mr. Adams-Jackson's background and identity. This testimony included that Mr. Adams-Jackson was 22 years old at the time of his death, he had a fiancée and two-year-old son at the time of his death, and that Ms. Jackson and Mr. Adams-Jackson had a close relationship with daily contact. II 50-51. In addition, the jury was shown pictures of Mr. Adams-Jackson with Ms. Jackson, Mr. Adams-Jackson with Ms. Jones, and Mr. Adams-Jackson with his son at his birthday party.

(Pet'r's Br., ECF No. 1-1, PageID.66–67 (footnote omitted).) Petitioner contends that the evidence was irrelevant because (1) the decedent's identity was not in dispute and (2) the testimony only served to bolster the decedent's image and garner sympathy from the jury. (ECF No. 1-1, PageID.27.) Petitioner argues, alternatively, that trial counsel rendered ineffective assistance for failing to object to this testimony. (*Id.*) The Court considers both arguments below.

### 1.  Admission of Testimony

With respect to Petitioner's claim, the court of appeals concluded that the evidence at issue was relevant and properly admitted under state law. *Johnson*, 2020 WL 6937371, at *3. Petitioner contends that the state court was wrong. He claims that the testimony was irrelevant and unduly prejudicial under Michigan Rules of Evidence 402 and 403. (Pet'r's Br., ECF No. 1-1, PageID.67.)

Petitioner's challenge to the court of appeals' determination that the evidence was admissible under state law is not cognizable on habeas review. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. The decision of the state

courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (stating "[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, this Court accepts as axiomatically correct the state court's determination that the evidence was admissible under state law.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

"[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted). Nonetheless, it is not impossible that an evidentiary ruling—even a ruling that is axiomatically correct under state law— might still violate due process because it offends some fundamental principle of justice. But this Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not and cannot make that showing. He has not identified any Supreme Court decisions holding that the admission of relevant evidence that is more probative than prejudicial—binding determinations made by the state courts—violates due process. Indeed, the Sixth Circuit has determined that "[t]he

Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (emphasis in original). Petitioner, therefore, has failed to demonstrate that the court of appeals' rejection of his claim concerning the admission of this testimony was contrary to, or an unreasonable application of, clearly established federal law.

### 2.      Ineffective Assistance of Counsel

Petitioner also claims that counsel rendered ineffective assistance by failing to object to the evidence. This claim fails as well. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.

The court of appeals concluded that it was perfectly reasonable for counsel to not object to the evidence and, further, the admission of the evidence was not prejudicial—it did not change the result. *Johnson*, 2020 WL 6937371, at *3 & n.2. Those determinations are entirely consistent with clearly established federal law. Because the evidence was relevant and more probative than prejudicial, any objection would have been futile. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner is not entitled to habeas relief on this claim.

### D.      Ground IV—Admission of Preliminary Examination Testimony

As his fourth ground for relief, Petitioner contends that his Confrontation Clause rights, as well as Michigan Rule of Evidence 804(b)(1), were violated by the admission of the testimony that

Mr. Oliver gave at Petitioner's preliminary examination. (ECF No. 1-1, PageID.70.) During

Petitioner's trial, the trial court informed the jury that Mr. Oliver was deceased. (Trial Tr. II, ECF

No. 8-10, PageID.801.) His preliminary examination testimony was read into the record because

the testimony was taken under oath and because Mr. Oliver was unavailable. (*Id.*, PageID.802–

803.)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be

confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400,

403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The

central concern of the Confrontation Clause is to ensure the reliability of the evidence against a

criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding

before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause

therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless

the witness is unavailable to testify and the defendant had a prior opportunity for cross-

examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Michigan has incorporated those

principles into the Michigan Rules of Evidence as an exception to the hearsay rule. *See* Mich. R.

Evid. 804(b)(1).

The court of appeals rejected Petitioner's claim, stating:

> We similarly find no error in the admission of a deceased witness's preliminary
> examination testimony at trial. "Constitutional questions, such as those concerning
> the right to confront witnesses at trial, are reviewed de novo." See *People v. Pipes*,
> 475 Mich. 267, 274; 715 N.W.2d 290 (2006). "[T]he Sixth Amendment bars the
> admission of testimonial statements by a witness who does not appear at trial unless
> the witness is unavailable and the defendant had a prior opportunity to cross-
> examine the witness." *People v. Dendel (On Second Remand)*, 289 Mich. App. 445,
> 453; 797 N.W.2d 645 (2010). Prior testimony, such as that given during a
> preliminary examination, is testimonial and its admission at trial implicates a
> defendant's confrontation right. See *People v. Bruner*, 501 Mich. 220, 229; 912
> N.W.2d 514 (2018). "Unavailability as a witness includes situations in which the
> declarant is unable to be present or to testify at the hearing because of death." See

*People v. Farquharson*, 274 Mich. App. 268, 272 n. 1; 731 N.W.2d 97 (2007); see also. As to the requirement that defendant have a prior opportunity for cross-examination, "'[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *People v. Sardy (On Remand)*, 318 Mich. App. 558, 564; 899 N.W.2d 107 (2017), quoting *United States v. Owens*, 484 U.S. 554, 559-560; 108 S. Ct. 838; 98 L. Ed. 2d 951 (1988); see also *Crawford v. Washington*, 541 U.S. 36, 54; 124 S. Ct. 1354; 158 L. Ed. 2d 177 (2004) ("The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.").

To the extent that defendant argues inferentially that his counsel was somehow unmotivated, ineffectiveness of counsel was an entirely separate theory for relief that defendant neither raised nor briefed. "Failure to brief an issue on appeal constitutes abandonment." *People v. McGraw*, 484 Mich. 120, 131 n. 36; 771 N.W.2d 655 (2009). In any event, the preliminary examination transcript reflects that defendant's counsel did in fact conduct a forceful cross-examination that elicited an admission from the witness that he regularly purchased illegal drugs from the decedent, was unemployed, and that he was under investigation for a separate homicide. The record reflects that defendant had ample *opportunity* for effective cross-examination of the witness at his preliminary examination. Therefore, the trial court did not violate defendant's Confrontation Clause right by admitting the witness's preserved preliminary examination testimony. See, e.g., *People v. Garay*, 320 Mich. App. 29, 39; 903 N.W.2d 883 (2017) (holding that admission of preliminary examination testimony with opportunity for cross-examination did not violate defendant's right of confrontation), overruled in part on other grounds by *People v. Skinner*, 502 Mich. 89; 917 N.W.2d 292 (2018).[3]

——————————

[3] In his questions presented, defendant also refers to MRE 804(b)(1) as an additional basis for appellate relief but fails to mention it again in his briefing. Accordingly, we hold this alternative argument abandoned. See *McGraw*, 484 Mich. at 131 n.36.

*Johnson*, 2020 WL 6937371, at *3–4. Although the appellate court's recitation of the standard primarily relied upon state law, that recitation is in no way inconsistent with clearly established federal law regarding the Confrontation Clause.

The United States Court of Appeals for the Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-

examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437–38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination" (internal quotation marks omitted)). Thus, Petitioner's challenge is certainly colorable. However, the Supreme Court has never held that a defendant's Confrontation Clause rights are violated when a witness is unavailable for trial and the trial court admits that witness's preliminary examination testimony. *See id.* at 438. Thus, for purposes of federal habeas review, the Sixth Circuit has concluded that a state court's determination that preliminary examination testimony was properly admitted is not an unreasonable application of clearly established Supreme Court precedent. *Id.* at 438–40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

Petitioner has failed to demonstrate that the court of appeals' determination that he received a prior opportunity to cross-examine Mr. Oliver and that such an opportunity overcame any Confrontation Clause concerns is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground IV.

### E.      Ground V—Notice of Habitual Offender Enhancement

As his last ground for relief, Petitioner contends that he is entitled to resentencing because the prosecution failed to provide proper notice, pursuant to Mich. Comp. Laws § 769.10, that he was subject to a habitual offender second sentence enhancement if found guilty at trial. (ECF No. 1-1, PageID.27.) The relevant statute provides:

> the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12[] of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the

information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

Mich. Comp. Laws § 739.13(1) (footnote omitted).

The court of appeals rejected Petitioner's claim, stating:

Defendant's final argument that the prosecution failed to serve the habitual-offender notice required by MCL 769.13 also lacks merit. Contrary to defendant's understanding, the record does in fact contain a proof of service filed on March 7, 2018, specifically memorializing how the prosecution served a copy of the information containing the habitual-offender notice upon defendant's counsel on March 6, 2018. Moreover, the record is replete with additional references to defendant's habitual-offender status. Because defendant does not argue—and could not prove—that he was unaware that the prosecution was seeking the enhancement or that he lacked an opportunity to contest its applicability, under a harmless-error standard, resentencing is not required. See *People v. Head*, 323 Mich. App. 526, 543-544; 917 N.W.2d 752 (2018).

*Johnson*, 2020 WL 6937371, at *4.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Here, Petitioner's assertion that he did not receive proper notice under the Michigan habitual offender statute is a state-law claim that was rejected by the court of appeals. As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Although compliance with the state habitual offender statute is conclusively resolved, the issue of constitutionally adequate notice remains. The Fourteenth Amendment's Due Process

20

Clause mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id.* "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Here, Petitioner cannot legitimately claim that he did not receive sufficient notice to allow him to defend against the habitual offender notice. The record indicates that on March 6, 2018, the prosecutor's office mailed a copy of the habitual offender notice to Petitioner's counsel. (ECF No. 8-15, PageID.1544.) Moreover, during Petitioner's arraignment in district court, the district judge gave notice of the charges set forth in the information and noted that the information:

> alleges you were previously convicted of a felony in January, of 2015. Therefore, Count One is punishable by up to life in prison. Count Two, by up to seven and a half years in prison with a mandatory forfeiture of the weapon. Count Three, by up to three years, to be served consecutively with any preceding any term of imprisonment imposed for the other charges.

(Arr. Hr'g Tr., ECF No. 8-3, PageID.318.) Petitioner indicated his understanding. (*Id.*, PageID.319.) Finally, at the end of Petitioner's preliminary examination, the district judge noted

that the parties had stipulated that Petitioner "has a prior felony conviction for home invasion second." (Prelim. Hr'g Tr. II, ECF No. 8-5, PageID.447.) Petitioner, therefore, had ample notice more than a year before his trial that the prosecution intended to seek an enhanced sentence premised upon the habitual offender statute. He fails to assert that this notice was insufficient to permit him to adequately prepare a defense. Thus, Petitioner's claim regarding the notice does not implicate his due process rights.

In sum, Petitioner's primary claim that the prosecutor failed to comply with the state statutory notice requirements regarding habitual offender sentencing enhancements is a state law claim that is not cognizable on federal habeas review, and the court of appeals' determination that such a claim is meritless binds this Court. Moreover, the record indicates that Petitioner received notice of the enhancement more than a year before trial, and he does not allege that the notice he received was inadequate to allow him to prepare a defense. Petitioner has failed to show that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground V.

## IV.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under

*Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated: March 31, 2023                                   /s/ Hala Y. Jarbou
                                                        HALA Y. JARBOU
                                                        CHIEF UNITED STATES DISTRICT JUDGE